**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ELEANOR G. COLLINS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-15648** |
| **WAFB, LLC, ET AL.** | **SECTION "B"(3)** |

<u>**ORDER AND REASONS**</u>

Before the Court is Defendant WAFB, LLC's "Special Motion to Strike." Rec. Doc. 35. Plaintiff Eleanor G. Collins timely filed an opposition memorandum. Rec. Doc. 38. Defendant requested, and was granted, leave to file a reply memorandum. Rec. Doc. 42. Plaintiff then filed an opposition to the reply. Rec. Doc. 43. For the reasons discussed below,

**IT IS ORDERED** that Defendant's special motion to strike (Rec. Doc. 35) is **GRANTED**.

I.    <u>**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**</u>

As previously discussed, this case arises out of Plaintiff's arrest on January 22, 2016. Rec. Doc. 1 at 2. The arrest was reported by Defendants Times-Picayune, L.L.C., WAFB, LLC, and Bogalusa Newsmedia, LLC. *Id.* In her complaint, Plaintiff states that these news agencies failed to clarify that allegedly fraudulent checks totaling $27,000 were not issued from her personal account. *Id.* at 4. Specifically, Plaintiff states that

> It has harmed the reputation of the plaintiff, enabled employment [sic] and destroyed the plaintiff's credibility. The fact that the plaintiff was the owner and these were company checks was never documented it

1

> only gave the impression that the plaintiff wrote these
> checks out of her personal checking account and
> intentionally deceived Robertson Oil Company.

*Id.* According to Plaintiff, the charge was ultimately *nolle prossed*. *Id.* at 3. Thus, on October 18, 2016, Plaintiff filed suit against Defendants for libel, slander, defamation, assault, and for violations of Section 230 of the Communications Decency Act and the First Amendment. *Id.* at 1.

In an earlier motion to dismiss for insufficient service, it was revealed that Plaintiff attempted to serve Defendant WAFB, a limited liability company, by mailing the summons and complaint to WAFB's registered agent. Rec. Doc. 20 at 4. However, this Court recognized that service by mail was insufficient and that Plaintiff's claims were therefore subject to dismissal under Federal Rule of Civil Procedure 12(b)(5). *Id.* (citing *Wesenberg v. New Orleans Airport Motel Assocs. TRS, LLC*, No. 14-1632, 2015 WL 5599012, at *2 (E.D. La. Sept. 22, 2015). However, we also recognized that the time for service under Rule 4(m) did not expire until January 16, 2017 and that Plaintiff, by responding to the motion, evidenced an intent to actively pursue her claims. *Id.* at 5 (citations omitted). Accordingly, on December 16, 2016, the Court denied the motion to dismiss without prejudice, but warned Plaintiff that failure to timely effect service could result in dismissal. *Id.* at 6 (citations omitted).

On March 9, 2017, the Court subsequently denied a similar motion to dismiss filed by Defendant Times-Picayune, L.L.C., requiring Plaintiff to obtain a waiver of service or otherwise properly serve Defendant Times-Picayune, L.L.C., and any other Defendant who had not yet been properly served, within twenty-one days of that Order. Rec. Doc. 37.

## II.  **THE PARTIES' CONTENTIONS**

In the instant motion, Defendant WAFB, LLC argues that "[t]his case arises out of WAFB's exercise of its constitutional right of free speech concerning a public issue – WAFB's publication of an article on its website (the 'News Report'), about Plaintiff's arrest by the Washington Parish Sheriff's Office for issuing worthless checks." Rec. Doc. 35 at 1. Consequently, Defendant maintains that Plaintiff's complaint is subject to a special motion to strike under Louisiana Code of Civil Procedure 971 and that "Plaintiff cannot satisfy her burden to establish a probability of success on the fundamental elements of her claims." *Id.* Specifically, Plaintiff's claims should be stricken and dismissed because "(1) WAFB cannot be held liable for relying on statements about Plaintiff made by law enforcement; (2) the statements in the News Report are true in that they accurately report statements about Plaintiff made by law enforcement; and (3) any defamatory

implications about Plaintiff are not actionable." Rec. Doc. 35-1

at 1.[1]

### III. <u>**LAW AND ANALYSIS**</u>

Under Louisiana Code of Civil Procedure 971,

A cause of action against a person arising from any act
of that person in furtherance of the person's right of
. . . free speech under the United States or Louisiana
Constitution in connection with a public issue shall be
subject to a special motion to strike, unless the court
determines that the plaintiff has established a
probability of success on the claim.

LA. CODE CIV. PROC. ANN. art. 971(A)(1).[2] It is Louisiana's "anti-

SLAPP" statute; "SLAPP" is an acronym for strategic lawsuit against

public participation, "which is a phrase used to describe

'generally meritless suits brought by large private interests to

deter common citizens from exercising their constitutional right

to petition or to punish them for doing so.'" *Schmidt v. Cal-Dive

Int'l, Inc.*, 183 F. Supp. 3d 784, 788 (W.D. La. 2016) (quoting

*Yount v. Handshoe*, 14-919 (La. App. 5 Cir. 5/28/15); 171 So. 3d

---

[1] Defendant reasonably characterizes Plaintiff's complaint as asserting claims
based on allegedly defamatory statements made in Defendant's news report. Rec.
Doc. 35-1 at 3. While Plaintiff's complaint alleges libel, slander, defamation,
assault, and violations of § 203 of the Communications Decency Act and the First
Amendment (Rec. Doc. 1 at 1), the Court agrees with Defendant's characterization
of Plaintiff's claims as essentially claims for defamation.
[2] Notably, a special motion to strike "may be filed within ninety days of service
of the petition, or in the court's discretion, at any later time upon terms the
court deems proper." LA. CODE CIV. PROC. ANN. art. 971(C)(1). Here, a summons for
WAFB was originally returned on October 19, 2016. Rec. Doc. 2. However, on
November 7, 2016, WAFB filed a motion to dismiss for insufficient service of
process. Rec. Doc. 6. While the Court denied the motion to dismiss, we recognized
that WAFB was not properly served. Rec. Doc. 20. A second summons for WAFB was
then returned on January 10, 2017. Rec. Doc. 23. Assuming that WAFB was properly
served at that time, the instant motion to strike, filed on March 3, 2017, was
filed within ninety days of proper service of the complaint.

381, 387, *reh'g denied* (6/16/15)) (citing *Lozovyy v. Kurtz*, 813 F.3d 576, 577 (5th Cir. 2015); *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 168 (5th Cir. 2009)). Essentially, the "nominally-procedural" statute "provides a procedural mechanism for dismissing certain defamation claims early in litigation unless the plaintiff can establish a 'probability of success.'" *Lozovyy*, 813 F.3d at 577; *Henry*, 566 F.3d at 168. It is a "device to be used in the early stages of litigation to screen out meritless claims brought primarily to chill the valid exercise of the constitutional right[] of freedom of speech . . . in matters of public interest." *Schmidt*, 183 F. Supp. 3d at 789 (citing *Williams v. Nexstar Broad., Inc.*, 11-887 (La. App. 5 Cir. 4/10/12); 96 So. 3d 1195, 1201; *Henry*, 566 F.3d at 169). It is an extraordinary remedy that "dismisses meritless claims quickly, and awards attorney's fees to the prevailing party." *Yount*, 171 So. 3d 381 at 387.

> Article 971 establishes a burden-shifting analysis for weeding out frivolous claims. To succeed on an Article 971 motion, the defendant must first make a prima facie showing that Article 971 covers the activity underlying the suit. That is, the defendant must 'establish[] that a cause of action against him arises from an act by him in furtherance of the exercise of his right of . . . free speech under the United States or Louisiana Constitution in connection with a public issue.' If the defendant makes this showing, 'the burden then shifts to the plaintiff to demonstrate a probability of success on his claim.' If the plaintiff fails to demonstrate a probability of success, the trial court dismisses the claim. Otherwise, the trial court denies the motion and the suit proceeds as it normally would.

*Henry*, 566 F.3d at 170 (quoting *Starr v. Boudreaux*, 07-0652 (La. App. 1 Cir. 12/21/07); 978 So. 2d 384, 388-89). "[T]he ''probability of success' standard does not permit courts to weigh evidence, assess credibility, or resolve disputed issues of material fact.' 'In other words, a non-movant's burden in opposing an Article 971 motion to strike is the same as that of a non-movant opposing summary judgment under Rule 56.'" *Schmidt*, 183 F. Supp. 3d at 790 (quoting *Lozovyy*, 813 F.3d at 586;[3] *Block v. Tanenhaus*, 815 F.3d 218, 221 (5th Cir. 2016) (rejecting the argument that Article 971 does not apply in federal court, because "a non-movant's burden under Article 971 is functionally equivalent to that under [Federal Rule of Civil Procedure] 56" and that, to avoid dismissal, the plaintiff need only establish a genuine dispute of material fact).

## A. IS DEFENDANT'S ACTIVITY PROTECTED UNDER ARTICLE 971?

Article 971 specifically provides that an "[a]ct in furtherance of a person's right of . . . free speech under the United States or Louisiana Constitution in connection with a public issue" includes, but is not limited to, "[a]ny written or oral

---

[3] Defendant WAFB objects to the Fifth Circuit's statement in *Lozovyy* that the court cannot "weigh evidence, assess credibility, or resolve disputed issues of material fact" on a special motion to strike under Article 971. Rec. Doc. 35-1 at 7 n.19. "Nevertheless, because Plaintiff's claims here are subject to a special motion to strike without the necessity of weighing evidence, assessing credibility, or resolving disputed issues of fact, WAFB reserves for another day whether *Lozovvy* [sic] correctly interpreted the meaning of 'probability of success' in article 971." *Id.*

statement or writing made in a place open to the public or a public forum <u>in connection with an issue of public interest</u>" or "[a]ny other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech <u>in connection with a public issue or an issue of public interest</u>." LA. CODE CIV. PROC. ANN. art. 971(F)(1)(c)-(d) (emphasis added); *see also Williams*, 96 So. 3d at 1202 (finding that articles and broadcasts made by a newspaper, television news show, and reporters regarding the Northeast Louisiana Community Development Corporation (the "CDC") "clearly related to free speech, that the CDC and its activities are a matter of public concern, . . . that the plaintiff as president and CEO of the CDC was a limited-purpose public figure . . . [and that the] articles and broadcasts are constitutionally-protected free speech.").

"Louisiana courts have interpreted the 'public issue' and 'public interest' requirement as being the same as 'pubic concern' in defamation cases." *Z Bayou, L.L.C. v. WAFB, L.L.C.*, No. 15-4384, 2016 WL 5940867, at *2 (E.D. La. Oct. 13, 2016) (citations omitted). The Louisiana Supreme Court recognizes United States Supreme Court precedent that "has described speech on matters of public concern as speech 'relating to any matter of political, social, or other concern to the community.'" *Kennedy v. Sheriff of E. Baton Rouge*, 05-1418 (La. 7/10/06); 935 So. 2d 669, 677 n.6 (quoting *Connick v. Myers*, 461 U.S. 138, 146-48 (1983)); *see also*

*Kirksey v. New Orleans Jazz & Heritage Found., Inc.*, 12-1351 (La.
App. 4 Cir. 2/27/13); 116 So. 3d 664, 669, *writ denied,* 13-686
(La. 5/3/13); 113 So. 3d 216 (ultimately finding that "the
underlying lawsuit involves a matter of public concern as the Jazz
Festival is one of the premier entertainment events each year in
the City of New Orleans, contributing millions of dollars each
year to the City's economy") (citation omitted). The Supreme Court
further notes that a matter is of public concern when it "is a
subject of legitimate news interest; that is, a subject of general
interest and of value and concern to the public." *Snyder v. Phelps*,
562 U.S. 443, 453 (2011) (citations omitted). "Whether speech
addresses a matter of public concern must be determined by the
content, form, and context of a given statement, as revealed by
the entire record." *Kennedy*, 935 So. 2d at 677 n.6 (quoting
*Connick*, 461 U.S. at 146-48); *see also Kirksey*, 116 So. 3d at 669.

The Fifth Circuit has further identified categories of speech
that constitute matters of public concern, including, for example,
"associating with political organizations and campaigning for a
political candidate," "[s]peech 'made against the backdrop of
ongoing commentary and debate in the press,'" or "[s]peech relating
to racial discrimination . . . ." *Herrera v. Med. Ctr. Hosp.*, 241
F. Supp. 2d 601, 609 (E.D. La. 2002) (citing *Vojvodich v. Lopez*,
48 F.3d 879, 885 (5th Cir. 1995); *Kennedy v. Tangipahoa Par.*
*Library Bd. of Control*, 224 F.3d 359, 373 (5th Cir. 2000); *Victor*

*v. McElveen*, 150 F.3d 451, 456 (5th Cir. 1998)). However, "[s]peech concerning a purely personal labor dispute, such as a disagreement between an employee and an employer about the conditions of employment, is not of public concern." *Herrera*, 241 F. Supp. 2d at 609 (citing *Ayoub v. Tex. A & M Univ.*, 927 F.2d 834, 837 (5th Cir. 1991)).

Defendant cites to several cases to support its assertion that "[s]peech about criminal conduct satisfies the statute's public-interest standard." Rec. Doc. 35-1 at 6 (citing *Lane v. Franks*, 134 S. Ct. 2369, 2378-80 (2014) (ultimately determining that "[t]ruthful testimony under oath by a public employee outside the scope of his ordinary job duties is speech as a citizen for First Amendment purposes" in part because "[i]t would be antithetical to our jurisprudence to conclude that the very kind of speech necessary to prosecute corruption by public officials . . . may never form the basis for a First Amendment retaliation claim"); *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 768-69 (1986) (where the United States Supreme Court eventually held that, "at least where a newspaper publishes speech of public concern, a private-figure plaintiff cannot recover damages without also showing that the statements at issue are false" and the case concerned articles suggesting that the "appellees had links to organized crime and used some of those links to influence the State's governmental processes, both legislative and

administrative"); *Armington v. Fink*, No. 09-6785, 2010 WL 743524, at *5 (E.D. La. Feb. 24, 2010) (finding that an article "describing and analyzing the events at Memorial Hospital in the days following Hurricane Katrina [was designed] to consider questions raised by disasters like how limited resources should be divided amongst patients and what is the line between comfort care and mercy killing," that the article "assert[ed] the importance of these issues in light of proposed legislation to alter the standard of medical care in emergencies," and that the article's stated purpose therefore presented an issue of public interest); *Kennedy*, 935 So. 2d at 682 (where a party claimed that "its employees were simply communicating suspected wrongful acts to officials authorized to protect the public from such acts, which, if substantiated, would implicate important community interests," the court determined that a qualified privilege applied because the employees "reported circumstances involving a matter affecting the public interest— the possible commission of a crime . . . –to the police . . . ."); *Thomas v. City of Monroe La.*, 35,526 (La. App. 2 Cir. 12/18/02); 833 So. 2d 1282, 1286-87 (finding that "[a]llegations of criminal conduct are relevant to an official's fitness for office," such that "the complaint against the plaintiff was a matter of public interest, spurring application of the special motion to strike"); *Johnson v. KTBS, Inc.*, 39,022 (La. App. 2 Cir. 11/23/04); 889 So. 2d 329, 331-32, *writ denied*, 04-3192 (La. 3/11/05); 896 So. 2d 68

10

(where the defendants broadcast an allegation that the plaintiffs' parents were related as brother and sister in news stories about the couple's murder, the court determined that "the plaintiffs' cause of action arose from the defendants' exercise of free speech in reporting a matter of public interest"); *Johnston v. NOE Corp. L.L.C.*, 46,647 (La. App. 2 Cir. 11/23/11); 81 So. 3d 735, 740, *writ denied,* 11-2838 (La. 3/2/12); 84 So. 3d 532 (where a television news station accurately reported statements provided by witnesses as to "the *alleged* commission and investigation of a serious crime—a sexual assault—which had been reported to the authorities," the court determined that "the news report concerned a matter of public significance")).

Instead of directly addressing this issue, Plaintiff states that, at the time the warrant was issued against her on November 14, 2014,[4] "[t]he Washington Parish District Attorney . . . was indicted on 18 or 19 counts of fraud and WAFB did not see that as newsworthy but a worthless check case in another parish its [sic] quite interesting." Rec. Doc. 38 at 2. She further argues that "[e]very parish in the state of Louisiana has a worthless check division with checks totaling a whole lot more than this .

---

[4] The accuracy of the dates provided by Plaintiff is questionable. However, Plaintiff subsequently suggests that "Defendant should have investigated and questioned why an arrest warrant that was issued on November 14, 2014 by the former District Attorney was not activated until January 22, 2016[,] well it's the same day plaintiff was reinstated in the Louisiana Medicaid program. This was an attempt to further destroy plaintiff and prevent reentry into the plaintiffs [sic] preferred industry." Rec. Doc. 38 at 4.

. . ." *Id.* Finally, she maintains that "[n]o one has been arrested for bringing a false charge and presenting a false bill of laden [sic] but the plaintiff is still defending a false claim that Defendants want to use Freedom of Speech as a cover to spread malicious statements." *Id.*

Essentially, Defendant WAFB relied on a press release from the Washington Parish Sheriff's Office to report that a local businesswoman issued worthless checks in the amount of $27,000 to purchase fuel from local distributors and then resell that fuel to other businesses. Issuing worthless checks is a crime. Criminal activity is certainly a matter of concern to the community and the subject of legitimate news interest. Plaintiff's alleged activities were therefore a matter of public concern—in the same way that the corruption in *Lane*, the politician's links to organized crime in *Hepps*, the hospital's use of euthanasia during a disaster in *Armington*, the reporting of a crime to police in *Kennedy*, the politician's alleged criminal conduct in *Thomas*, the circumstances of the murder in *Johnson*, and the alleged commission and investigation of a sexual assault in *Johnston* were all considered matters of public concern. The fact that some of Plaintiff's alleged activities occurred in an area that Defendant serves further supports finding that Defendant's report was made "in connection with an issue of public interest" under Article 971.

**B. CAN PLAINTIFF PROVE A PROBABILITY OF SUCCESS OR ESTABLISH A GENUINE DISPUTE OF MATERIAL FACT?**

"The plaintiff must produce 'evidence of sufficient quality and quantity to demonstrate that he [or she] will be able to meet his [or her] burden of proof at trial.' This has been described as a difficult burden, justified by the importance of protecting free speech rights." *Armington*, 2010 WL 743524, at *4 (citations omitted).

Here, Plaintiff's complaint essentially alleges defamation and therefore must establish, or otherwise demonstrate the existence of a genuine dispute of material fact as to, "(1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury." *Cangelosi v. Schwegmann Bros. Giant Super Markets*, 390 So. 2d 196, 198 (La. 1980) (citations omitted); *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 638 (5th Cir. 2002) (citing *Cangelosi*, 390 So. 2d at 198). "If even one of the required elements of the tort is lacking, the cause of action fails." *Costello v. Hardy*, 03-1146 (La. 1/21/04); 864 So. 2d 129, 140 (citations omitted); *see also English v. Wood Grp. PSN, Inc.*, No. 15-568, 2015 WL 5061164, at *15 (E.D. La. Aug. 25, 2015). Further, "the United States Supreme Court held that the First Amendment . . . requires that a plaintiff who is a private figure and who seeks damages for public concern speech claimed to be defamatory has the burden of proving falsity (and

fault) in order to recover damages." *Spears v. McCormick & Co.*, 520 So. 2d 805, 808 (La. App. 3 Cir. 1987), *writ denied,* 522 So. 2d 563 (La. 1988) (citing *Hepps*, 475 U.S. 767).

"Louisiana courts have held that when a publisher of a news story relies upon statements made by law enforcement, even when the statements made by law enforcement are false, the publisher will not be held liable for defamation." Rec. Doc. 35-1 at 9 (citing *Wilson v. Capital City Press*, 315 So. 2d 393, 398 (La. App. 3 Cir.), *writ denied,* 320 So. 2d 203 (La. 1975) (where a newspaper report relied on a news release from the state police and accurately reported the information contained in that release, the newspaper was not under any duty to verify the information because the news release came from a "source [that] was reliable and in a proper position of authority and knowledge such that no fault can be attributed to [the reporter] or the [newspaper] for reliance on the information received" and the plaintiff's suit was dismissed)); *see also Lovett v. Citizen*, 584 So. 2d 1197, 1197-99 (La. App. 2 Cir. 1991) (where a local newspaper reported that the plaintiff was arrested for theft, based on information received from the chief of police, but the plaintiff was never arrested for theft, the court recognized that Louisiana courts "have uniformly held that when the media is furnished arrest information from an authorized police source, it is under no obligation to verify from

other sources the information so furnished unless it has knowledge which would make it aware further research was necessary to insure the veracity of the information" and that the newspaper and reporter therefore "had no duty to verify the information").

Defendant maintains that the Washington Parish Sheriff's Office's press release was "published by an authorized source of information," "there was no reason for WAFB to doubt the accuracy of the information contained in the Press Release," Plaintiff therefore cannot show fault, and Plaintiff's claims should be stricken and dismissed. Rec. Doc. 35-1 at 10.

Plaintiff asks the Court not to strike her claims, considering "WAFB's lack of responsible journalism in presenting a story that is false. The Constitution also protects the plaintiff's right and the public['s] in the assurance that information presented is truthful and done so in an integris [sic] manner." Rec. Doc. 38 at 1. She further notes that the arrest occurred on Friday, January 22, 2016, the press release was issued on January 25, 2016, and that "[t]wo days is plenty of time to get the facts on any news worthy [sic] story" (*id.* at 2); "[t]he statements made were false and it does not matter the source of information and how it was gathered" (*id.* at 3); and "it is irresponsible for the Defendant to place blame on law enforcement without copability [sic] for their actions" (*id.* at 5).

Fundamentally, Defendant WAFB argues that every statement made in its news report "was made by the Washington Parish Sheriff's Office in its Press Release." Rec. Doc. 35-1 at 2. The January 25, 2016 press release from the Washington Parish Sheriff's Office provided, in full:

> On January 22, 2016, Washington Parish Sheriff's Office Investigators arrested a Baton Rouge business woman for issuing worthless checks in the amount of $27,000 to Washington Parish businesses. Eleanor G. Collins, 47, a resident of 18555 Surrey Court in Baton Rouge was arrested and transported to the Washington Parish Jail where she was booked on one count of issuing worthless checks. Her bond was set at $5,000. Collins met the conditions of her bond and was released on January 23. Collins works in the fuel sales and distribution business. She purchased fuel from local distributors with worthless checks and then resold the fuel to other businesses. Sheriff Randy Seal commented on the arrest, "I congratulate our investigators for tracking down Collins in Baton Rouge and making the arrest. Our officers work hard to protect citizens and businesses in Washington Parish and will always be on the alert for those who steal from others. I appreciate all that they do."

Rec. Doc. 35-2 at 5. Defendant's January 25, 2016 news report provided, in full:

> A Baton Rouge business woman was arrested for issuing worthless checks in Washington Parish. The Washington Parish Sheriff's Office arrested Eleanor Collins on Friday, January 22 on one count of issuing worthless checks. Collins, who works in fuel sales and distribution, allegedly wrote $27,000 worth of bad checks to buy fuel at a business in Washington Parish. Deputies say she then resold the fuel to other businesses. She was booked into the Washington Parish jail, where her bond was set at $5,000. She was released on Saturday, January 23.

*Id.* at 3.

Comparatively speaking, there is only one apparent minor difference between the press release and the news report. While the press release states that Plaintiff purchased fuel "from local distributors," the news release states that she purchased "fuel at a business in Washington Parish." This is not a significant difference. Defendant relied on a press release from the sheriff's office and accurately reported the information in that release. The information came from a reliable source and Plaintiff does not persuasively allege that Defendant had knowledge that would make it aware of the need for further research.[5] Consequently, Defendant was under no duty to verify the information before publishing it and Plaintiff has not demonstrated a probability of success in proving fault or otherwise established a genuine dispute of material fact as to Defendant's fault.

Further, Defendant argues Plaintiff cannot prove that the statements made by Defendant were false. Rec. Doc. 35-1 at 11; *see also Cavalier v. Houma Courier Newspaper Corp.*, 472 So. 2d 274, 276 (La. App. 1 Cir. 1985) ("The plaintiff in a defamation case must bear the considerable burden of showing that he can produce sufficient evidence at trial to prove with convincing clarity that the defendant made false statements in the news article and that

---

[5] At one point, Plaintiff does argue that the local district attorney was indicted on several counts for entirely unrelated matters. But this does not suggest that Defendant should have questioned the veracity of the press release from the Washington Parish Sheriff's Office.

he either knew the statements were false or that he recklessly disregarded the question of their falsity") (citation omitted) (emphasis added); *Romero v. Thomson Newspapers (Wis.), Inc.*, 94-1105 (La. 1/17/95); 648 So. 2d 866, 870 ("Truth is a defense, and it is sufficient if an allegedly libelous article is <u>substantially true</u>:  unimportant details need not be accurate") (citation omitted) (emphasis added); *Hopkins v. Keith*, 348 So. 2d 999, 1002 (La. App. 2 Cir.), *writ not considered,* 350 So. 2d 893 (La. 1977) (errors and inaccuracies in reporting matters of public interest involving legal and judicial proceedings "should be a significant variation from the truth to give rise to liability. In order to avoid a 'chilling effect' on the exercise of First Amendment rights, the media must be allowed 'breathing space.'"); *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1073 (5th Cir. 1987) ("A publication is also protected if it is 'substantially true,' *i.e.*, if it varies from the truth only in insignificant details or if its 'gist' or 'sting' is true.") (citations omitted)).

In its basic essence, the news report simply stated that Plaintiff was arrested. Plaintiff does not dispute that she was arrested; and, it is immaterial that  charges against her may have been nolle prossed because her arrest was not erased. Rec. Doc. 35-1 at 12. Defendant further maintains that the remaining statements in the news report reflect the statements made in the press release. *Id.* at 12-13; *see also* Rec. Doc. 42 at 5.

Plaintiff argues that the story published by Defendant is proven false by exhibits, which purportedly show that (1) Hub Petroleum Services, LLC is a Louisiana limited liability company and (2) that Plaintiff is the owner of the company, as evidenced by a 2014 company tax return. Rec. Doc. 38 at 1. However, these documents were not attached to Plaintiff's opposition memorandum and Plaintiff does not explain how these documents would demonstrate the falsity of the news report. Nonetheless, Plaintiff further argues that

> [t]he company check presented on behalf of Hub Petroleum Services, LLC was written to Robertson Oil Company, LLC and paid in full with bank cashier checks prior to Mr. Robertson presenting to the Washington Parish District Attorney. The second one was paid in full on September 2, 2014 and November 10, 2014 in the amounts of $12,000 and $10,000 . . . to the Washington Parish District Attorney Office. The warrant was issued on November 14, 2014.

*Id.* at 1-2. Plaintiff further claims that "the fuel came from Exxon in Baton Rouge and the check was issued in Baton Rouge not Washington Parish and it was never resold to other businesses only to citizens in the local community." *Id.* at 4.

Defendant responds that the statements regarding from whom and to whom Plaintiff purchased and sold the fuel are substantially true because the "gist" of the news report is true. Rec. Doc. 42 at 6.

Even if the Court accepts Plaintiff's assertion that the checks were paid in full before the warrant was issued, it does

not change the fact that Plaintiff was subsequently arrested for issuing worthless checks—which is exactly what Defendant reported. The remaining discrepancies, namely that Plaintiff claims the checks were issued in Baton Rouge, not Washington Parish, and that the fuel was resold to citizens, not to "other businesses," are insignificant details. The article is substantially true. Plus, the news report uses qualifying language, including that Plaintiff "<u>allegedly</u> wrote $27,000 worth of bad checks to buy fuel at a business in Washington Parish" and that "Deputies <u>sa[id]</u> she then resold the fuel to other businesses." Rec. Doc. 35-2 at 3 (emphasis added). Given the qualifying language, it cannot be said that these statements are false unless Plaintiff can show that it was not alleged that she wrote bad checks or that deputies did not say Plaintiff resold the fuel to other businesses. The press release (Rec. Doc. 35-2 at 5) demonstrates that Plaintiff cannot prove these things. Consequently, Plaintiff has again failed to demonstrate a probability of success on her claims or otherwise establish a genuine dispute of material fact as to falsity.

Third, Defendant argues that defamatory implications are not actionable in this case, so Plaintiff's allegation that the news report "'gave the impression" that Plaintiff wrote bad personal checks as opposed to company checks and 'intentionally deceived Robertson Oil Company'" is not actionable. Rec. Doc. 35-1 at 13 (quoting Rec. Doc. 1 at 4) (citing *Fitzgerald v. Tucker*, 98-2313

(La. 6/29/99); 737 So. 2d 706, 717 ("truthful facts which carry a defamatory implication can only be actionable if the statements regard a private individual *and* private affairs. 'Where public officers and public affairs are concerned, there can be no libel by innuendo.'" (citation omitted)). *See also Schaefer v. Lynch*, 406 So. 2d 185, 187 (La. 1981) (where an article "convey[ed] the impression" of wrongdoing, but "[w]here public officers and public affairs are concerned, there can be no libel by innuendo," summary judgment was granted in favor of the defendants).

Plaintiff responds that "[t]he company check and the company name were never mentioned in the article." Rec. Doc. 38 at 1.

The instant case involves a private individual and a matter of public concern; consequently, it appears from the Louisiana case law that the truthful facts recited in the news report cannot give rise to a claim for defamation, even if Plaintiff successfully showed that they carry a defamatory implication.

### C. IS DEFENDANT ENTITLED TO ATTORNEY'S FEES AND COSTS?

"[A] prevailing party on a special motion to strike <u>shall</u> be awarded reasonable attorney fees and costs." LA. CODE CIV. PROC. ANN. art. 971(B) (emphasis added). "Courts applying this provision have determined that, under Article 971(B), a prevailing party may only recover attorneys' fees associated with the motion to strike, but not fees associated with defending the entire lawsuit." *McIntyre v. Gilmore*, No. 15-282, 2015 WL 2250210, at *5 (E.D. La. May 13,

2015) (ultimately granting the prevailing party ten days within which to provide the court with a calculation of attorneys' fees and costs and supplemental briefing regarding the reasonable number or hours worked, the specific tasks undertaken, and the reasonable hourly rate charged). Plaintiff's *pro se* status does not necessarily protect her from an award of attorneys' fees. *See, e.g. McIntyre v. Gilmore*, No. 15-282, 2015 WL 4129378, at *1 (E.D. La. July 8, 2015); *Alexanian v. Brown*, No. 07-806, 2010 WL 103609, at *3 (W.D. La. Jan. 7, 2010) (finding the award of fees mandatory, but that "the statute does not mandate any particular amount of fees and costs, and does not prohibit determination and assessment of a reasonable fee" and that, because the plaintiff's "primary motivation, however misguided, appears to have been to defend his character and reputation, and not to chill participation in public matters or to abuse the judicial system," an award of $2,500 was reasonable against a *pro se* plaintiff); *Darden v. Smith*, 03-1144 (La. App. 3 Cir. 6/30/04); 879 So. 2d 390, 400, *writ denied,* 04-1955 (La. 11/15/04); 887 So. 2d 480 (where the majority found the award mandatory, but Judge Cooks noted in a dissent that "[b]y mandating the award of attorney's fees to a prevailing defendant, in every case, . . . we risk penalizing individuals for asserting their constitutional right to petition the court for redress of an alleged grievance. Although [the plaintiff] did not present enough evidence to sustain her cause of action, she had every right to

defend her character and reputation against a perceived attack."); *Stern v. Doe*, 01-0914 (La. App. 4 Cir. 12/27/01); 806 So. 2d 98, 103 (finding an award of fees discretionary).

This Court has determined that Defendant's activities were protected under Louisiana Code of Civil Procedure article 971 and that Plaintiff failed to demonstrate a probability of success on her claims or otherwise establish a genuine dispute of material fact. Consequently, Defendant is the prevailing party and shall be awarded attorneys' fees associated with the special motion to strike. Recognizing the Court's discretionary authority in this case, we award $500.00 as a reasonable fee for work on the instant motion. Plaintiff is proceeding *pro se*, with no indication in this record of any special legal skills or training, and with concerns over disparate media coverage. The above factors mitigate in favor of the noted award in this particular instance.

## IV. <u>CONCLUSION</u>

For the reasons outlined above,

**IT IS ORDERED** that Defendant's special motion to strike (Rec. Doc. 35) is **GRANTED** and that Defendant WAFB, LLC is awarded a reasonable fee of $500.00.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant WAFB, LLC, most reasonably construed as claims for defamation, are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that **within ten (10) days from the date of this Order**, Plaintiff shall show cause **in writing** why the claims against the remaining Defendants, Bogalusa Newsmedia, LLC and Times-Picayune, L.L.C., should not be dismissed on similar grounds. It appears to the Court that Plaintiff's remaining claims rest on the same factual and legal bases as the claims dismissed today. Accordingly, to save time, money, and resources, Plaintiff shall show cause why her remaining claims should not be dismissed. Plaintiff is reminded that "*pro se* litigants, like all other parties, 'must abide by' the rules that govern the federal courts." *Frazier v. Wells Fargo Bank, N.A.*, 541 F. App'x 419, 421 (5th Cir. 2013) (citing *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994)). Failure to timely comply with this Order may result in various sanctions, including dismissal. FED. R. CIV. P. 41(b).

New Orleans, Louisiana, this 18th day of April, 2017.

_____

SENIOR UNITED STATES DISTRICT JUDGE